This is an appeal from a decree of the Essex County Orphans Court settling the final account of the executors and trustees of the will of John H. Willey, deceased. The will gave to testator's widow a legacy of $30,000, and bequeathed the residuary estate to the executors in trust,
"To pay the income from such trust fund to my wife Ella Stickney Willey, during her life, in monthly or weekly payments.
"To pay so much of the principal of the fund from time to time to my wife as may be required to meet emergencies or to maintain her comfortably, the amounts so used to be determined in the sole discretion of the trustees hereinafter named.
"Upon the death of my wife, or upon my death should I survive her, the balance of principal and accrued income of this fund shall be paid to the First Methodist Church of Montclair to be used for educational purposes." *Page 119 
The corpus account as allowed by the Orphans Court shows that $29,831 has been paid on account of the widow's legacy, leaving $169 still due thereon, and that the residuary trust fund, after paying executors' commissions and counsel fees, is $12,712. In the sum paid on the widow's legacy are a large number of items, totaling $9,568, for her necessary maintenance. The accountants paid none of the income to the widow, but accumulated it and have on hand a balance of net income, $1,375. The will directs payment of income monthly or weekly, and it seems clear that the income should have been applied for Mrs. Willey's benefit rather than accumulated and thus leave all of these expenses to be paid out of her legacy. But there is no disagreement on this score, for the matter can be righted by directing the executors and trustees to pay to the widow's administrator the balance of income on hand. The testamentary direction that, upon the death of the widow, the accrued income shall be paid to the remainderman, the Methodist Church, means only the small balance which might be on hand after the last weekly or monthly payment, or perhaps income accrued but not received by the trustees. Either way the amount is so small that it can be disregarded and the whole balance of net income be taken as due to the widow's administrator.
The only question on the appeal is whether the balance of the maintenance payments, $8,193, was properly charged against the $30,000 legacy, or should have been paid out of the trustcorpus. The appellant argues that it was the duty of the trustees to furnish the total amount necessary for the maintenance of the widow out of the residuary fund without regard to her other means. Whether or not this is correct depends, of course, on the intention of the testator.
In Cox v. Wills, 49 N.J. Eq. 130, 573, testator gave the residue of his estate to his widow in confidence, believing that she would, by her will, distribute among his relatives so much of it "as she may not use for comfortable maintenance." Upon receipt of the fund from his executor, she mingled it with her own property and thereafter lived upon the income from the whole. At her death, nineteen years later, the combined fund had been greatly increased by the accumulation *Page 120 
of unexpended income. The Court of Errors and Appeals held that the widow had had the right to use so much of her husband's estate as was reasonable and sufficient for her comfortable maintenance, without regard to her other property, and further, as I understand the opinion, that it would be presumed that she had taken her maintenance from the residuary fund and had not spent her separate income. The court directed that the account of her personal representative be so stated as to show "her receipts from the investments of money belonging to her husband and the amount she has used for her comfortable maintenance * * *. Her own estate and its accumulations by this accounting will be separated from the general funds in the hands of the executors of her will and can be distributed under it." It will be observed that Cox' will made no distinction between corpus and income and neither did the court.
In re Martin's Will (N.Y.), 199 N.E. Rep. 491, was a case where testator gave his residuary estate to trustees to pay to a cousin "the net income thereof in quarter yearly installments and such part of the principal thereof as she may require for her care, support and comfort during her natural life." The court said, "The primary question in this class of cases always is, Does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists." The beneficiary of Martin's will was held entitled to payments out of the principal only in the event that the income from the trust fund supplemented by her independent income should be insufficient.
The Massachusetts Supreme Court, in Lumbert v. Fisher,139 N.E. Rep. 446, considered a will by which testator devised real estate to his wife for life with remainder to his children, and added, "It is my wish and will, however, that if necessary for her comfort, maintenance and support my *Page 121 
said wife shall have, use and expend any portion or all, of my said real estate." She had a little estate of her own, $2,023, and the question was whether she had to exhaust that before using the principal of her husband's estate. The court said: "Although the fact that she has property of her own is to be taken into consideration in determining whether she is entitled to an allowance out of the principal for her support, yet it cannot be found that it was the intention of her husband that she should exhaust the whole of her individual estate before she is entitled to have any part of the principal." And the court concluded: "She is entitled to receive such sums as are reasonable, taking into account her age, her physical condition, her situation in life, and all circumstances."
There is also a very helpful line of Connecticut decisions, of which the latest is Hoops v. Stephan, 38 Atl. Rep. 2d588.
Dr. Willey, the testator, was a retired minister of the Methodist Church, who was approaching the age of ninety years at the time of his death. His will was made seven months before his death. His widow, about the same age as her husband, survived him a little less than two years. For the last five years of her life, and at the time when Dr. Willey made his will, she had been very feeble, under the constant care of a nurse, and receiving frequent attention from her family physician. Mrs. Willey had a separate estate of around $90,000, or considerably larger than her husband's, and while they were both alive, they each paid one-half of the household expenses. After his death, her income was about $5,000 a year, exclusive of anything to which she might be entitled from her husband's estate. The expenses which are in controversy, were principally the wages of Mrs. Willey's nurse and another attendant during the twenty-two months that the widow outlived her husband. Her remaining expenses were paid out of her other income.
Dr. Willey, at the time he made his will, was familiar with his wife's separate estate and knew the approximate income from it. He presumably realized that the income from his residuary estate would go only a small way toward supporting *Page 122 
her and that if all her suitable expenses were taken from the trust fund, the fund would be exhausted in a couple of years. This was not his plan. We may say with assurance that he supposed Mrs. Willey's income would be applied toward her support. Furthermore, it was his apparent expectation, or at least his hope, that some of the trust fund would remain intact throughout Mrs. Willey's life, for he directed the payment of the income from it to his widow for life. And he wished it to remain available to meet emergencies. Lastly, he hoped some part would go to the First Methodist Church.
The executors and trustees of the will of Dr. Willey are the Bank of Montclair and Herbert W. Stickney, a relative of, and one of the two next of kin of, Mrs. Willey. Mr. Stickney had a broad power of attorney from her. Quite properly they took into consideration the independent income of Mrs. Willey and her separate resources. It was their function to determine from time to time whether or not the situation was such that they ought use trust corpus to maintain her. They decided not to use it and instead employed the $30,000 legacy to supplement Mrs. Willey's income. Their decision should not be disturbed. The decree of the Orphans Court will be affirmed.