## (January 25, 1966)

■ In the Matter of the Estate of SIDNEY H. SKIDELL, Deceased. GLADYS SKIDELL, as Executrix of SIDNEY H. SKIDELL, Deceased, Appellant; BERENICE C. SKIDELSKY et al., Respondents.

APPEAL from a decree of the New York County Surrogate's Court, entered April 29, 1965, insofar as it construed certain provisions of decedent's will.

MEMORANDUM BY THE COURT. While we agree with the view of the minority that it was error to permit the testimony of the lawyer-draftsman of the will as to the testator's intention, since such testimony was unnecessary it may be disregarded as not prejudicial. Moreover, it appears that the court itself disregarded such testimony for no reference is made thereto in its opinion. However, unlike the minority, we find no ambiguity in the will. The testamentary scheme is evident, the language clear and the objective apparent. Accordingly, we affirm the decree, so far as appealed from, on the opinion of the Surrogate, with $50 costs to all parties filing briefs payable out of the estate.

BREITEL, J. (dissenting). The issue is whether a testamentary direction against estate tax apportionment applies to an intraresiduary bequest. In concrete terms, the issue is whether a surviving sister's share in the residuary estate would be subject to the tax while the surviving widow's share as a preresiduary bequest would not be.

The will in question, after a usual, formal direction to pay debts, funeral and administration expenses, bequeathed to the widow "one-half ($\frac{1}{2}$) of my Estate, of whatsoever kind, nature and description" in trust for the life of the widow. There then followed a series of bequests in disposition of the remainder, followed by a series of outright, immediate bequests to individuals and to organized charities. Only then did the will provide, in paragraph SIXTH, that all "the rest, residue and remainder of my Estate, of whatsoever kind, nature and description," was bequeathed in trust for the life of the surviving sister, also followed by a series of gifts in disposition of the remainder. After various other bequests and will directions, paragraph ELEVENTH appears, reading as follows: "ELEVENTH: I direct that any and all inheritance, transfer, legacy, succession and all other death taxes and duties of any nature which may be assessed or imposed, upon or with respect to property passing under this Will, or property not passing under this Will (including insurance or annuities) to which I may be entitled or over which I may have the power of appointment, shall be paid out of my Estate as an expense of administration, and no part of said taxes shall be apportioned or pro-rated to any legatee or devisee under this Will or any person owning or receiving any property not passing under this Will."

It should be immediately observable that serious divergences in draftsmanship were involved. To the widow was given in trust one half of the entire estate, in words usually signifying a gross (adjusted) or "net" estate.* With respect to the sister, the quoted language purports to give her not one half of the estate but one half of the residue. The tax exoneration clause is broad, but if intraresiduary bequests are literally included there is no source of funds out of which to pay the taxes. As a matter of law, of course, the taxes must be paid out of the residuary when there is an exoneration clause, the clause having the effect of abrogating the effect of the apportionment statute.

The Surrogate permitted the lawyer-draftsman of the will to testify to conversations with testator that it was the latter's intention to treat his widow and his sister, both incidentally in their late years, equally. The introduction of such evidence was patently erroneous (*Dwight* v. *Fancher,* 245 N. Y. 71, 74; *Matter of Frederick,* 41 Misc 2d 759, 762–763 and authorities cited, affd. 22 A D 2d 760). Moreover, no effort is made by any respondent to justify its admission, except to argue that it was not prejudicial. It must, therefore, be disregarded.

---

* On any view of the case the gross estate must be adjusted by deducting debts and expenses (cf. Tax Law, § 249-s, subd. 1).

Assuming, *arguendo,* that the several provisions of the will to which reference has been made do not clearly leave the burden of the tax to be borne by the residuary alone and that a question of construction is involved, the decree to this extent must nevertheless still be reversed. Since the enactment of the apportionment statute in 1930 (Decedent Estate Law, § 124) the rule has been explicit that in the absence of a clear, unambiguous direction to the contrary, tax apportionment among legacies pursuant to the statute will be directed. In case after case ambiguous provisions have been struck down without any effort at construction on the ground that ambiguous directions will not suffice to take a bequest or a will outside the operation of the statute *(Matter of Schubert,* 10 N Y 2d 461, 471, and the many cases cited; *Matter of Pepper,* 307 N. Y. 242, 250, in which the court stated: "We need only hold that it *does not contain a clear and unambiguous direction to that effect*" [emphasis in original]). But no one is contending in this case that there is an ineffective exoneration clause.

As in the *Pepper* case *(supra)* a bequest of half the gross estate to the widow in this case permits maximum utilization of the marital deduction, subject only to taxes allocable to her share if they were not excluded by virtue of the exoneration clause (Tax Law, § 249-s, subd. 3; *Matter of Pepper, supra,* pp. 247-248). In many respects the *Pepper* case provides an interesting parallel for this, except that there it was the widow who was bequeathed a share in the residuary estate, and it was held that the apportionment clause failed for ambiguity.

An additional argument for respondent sister is that the exoneration clause explicitly assimilates the estate taxes as an administration expense, which therefore are deductible from the gross estate (see *Matter of Cromwell,* 199 Misc. 143, affd. 278 App. Div. 649, affd. 303 N. Y. 681). The trouble with this argument is that it is an argument for construction only, makes the exoneration clause "unclear", and under the doctrine, would render the whole exoneration clause ineffective, no more a boon to respondent sister than it would be to appellant widow. Moreover, it is negatived by the fact that testator used different language in the bequests to his widow and sister, giving the widow one half his estate, and to the sister one half the residue. They do not mean the same thing.

The best that could be said in this case, and then only by manipulating the language, is that this will contains an ambiguity with respect to the exoneration clause and only with respect to its effect upon a gift of one half of the residuary.

There is in this case an unambiguous direction against apportionment as to the preresiduary bequests, and as is evident from a reading of the will a hiatus as to intraresiduary bequests (cf., however, *Matter of Cromwell, supra*). That leaves only the residuary estate out of which to pay the taxes as was the situation prior to the enactment of section 124 of the Decedent Estate Law. And this is still the situation where there is an exoneration clause because the taxes must be paid, and there is only the residuary from which to pay them.

Accordingly, the decree should be reversed, as a matter of law, to the extent appealed from and it should be declared that the widow's interest is to be determined before the allocation of estate taxes.

Botein, P. J., Valente and Stevens, JJ., concur in memorandum by the court; Breitel, J., dissents in opinion in which McNally, J., concurs.

The decree affirmed, etc. [49 Misc 2d 147.]